UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

ANTHONY SADLER                                                        PLAINTIFF

v.                                              CIVIL ACTION NO. 5:21-cv-63-BJB

WELLPATH et al.                                                      DEFENDANTS

### MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Anthony Sadler filed a motion for preliminary injunction (DN 58)

seeking injunctive relief against Defendant Wellpath regarding several medical issues: to provide

adequate medication for his neuropathic pain, proper care and/or physical therapy for his arm,

transport to his medical appointments, and renew his prescription for Gabapentin or comparable

pain relief.  The Court denies the motion for the reasons discussed below.

### Background

Plaintiff's underlying complaint originally brought claims of Eighth Amendment

deliberate indifference to a clavicle injury he had previously sustained while at Northpoint

Training Center (NTC) against Wellpath, the medical services provider; employees at NTC; and

employees at the Kentucky State Penitentiary (KSP), where he was housed when he filed the

lawsuit.  The Complaint alleged, among other things, that he hadn't then received a surgery for

his injured clavicle that an outside doctor said might be required. Shortly after he filed his

Complaint, however, Plaintiff underwent the recommended surgery.[1]

This Court previously severed the claims related to Plaintiff's care at NTC on the ground

of misjoinder.  DN 20.[2]  But the Court allowed claims to proceed against Wellpath after initial

---

[1] Plaintiff was moved to Little Sandy Correctional Complex (LSCC) on May19, 2021 and had surgery the next day. *See* DN 16, p. 2.
[2] The Court severed the claims against the NTC Defendants because NTC is located in the Eastern District of Kentucky, among other reasons.  *See* DN 20, p. 2.

review under 28 U.S.C. § 1915A: he alleged that Wellpath changed its formulary in 2021 to discontinue Gabapentin, a mood stabilizer that also had provided relief for his clavicle pain, and generally followed a policy of delaying or denying medical treatment to cut costs.  DN 21, pp. 3, 7.  The Court also allowed individual-capacity claims to continue against Defendants D'Amico, Ponzetti, and Ramey, who are Wellpath employees at KSP, related to their care of Plaintiff's clavicle injury while he was housed at KSP.  *Id*. at 6.

Plaintiff, now housed at LSCC, filed this motion for a preliminary injunction more than a year after his transfer to LSCC and his surgery.  He moved for a preliminary injunction that would require Wellpath to do four things: provide adequate pain medication for neuropathic pain due to radiculopathy and Manu neuropathy, provide proper "after care"/physical therapy, transport him to all scheduled medical appointments, and either renew his prescription for Gabapentin or provide a "medically comparative alternative" to treat his severe pain.  Other than pointing to Wellpath and its "successors in office, agents, and employees and all other persons acting in concern and participation with them" (DN 58, p. 1), Plaintiff does not explain what person or persons would be required to perform these actions should the Court grant his motion. The Court presumes that any such person would be located at LSCC.

Plaintiff attached a declaration, signed under penalty of perjury, which includes his statements that he had been "prescribed Gabapentin since Spring 2019 by Wellpath psychiatric [services] for psychological treatment;" that Wellpath provides medical services in all Kentucky Department of Corrections prisons; that his Gabapentin prescription expired on February 28, 2021[3] "and it is not being reordered"; that he was diagnosed on September 22, 2022 with right radiculopathy and right ulnar Manu neuropathy by Dr. Megan Rudinsky; and that he has been

---

[3] Plaintiff was still housed at KSP at this time.

referred to see an orthopedist for another possible surgery.  Plaintiff also declares: "Upon information and belief, Wellpath is taking a list of medication which includes: Gabapentin . . . from all inmates for purposes of reducing the number of inmates on medication to cut costs." DN 58-1, para 20.

Defendants oppose Plaintiff's motion, arguing that the allegations it contains are not sufficiently related to the claims and parties in this matter.  DN 62.  They assert that the motion for preliminary injunction relates to medical care at LSCC, which is located in the Eastern District of Kentucky.  They argue that his motion may be denied solely because Plaintiff requests injunctive relief at a different facility and because generally an inmate's transfer to another prison moots a request for injunctive relief.  Further, they point out that allowing him to raise legal theories in a preliminary-injunction motion that differed from those in his complaint would permit him to avoid the filing fee and the three-strikes provision of the Prison Litigation Reform Act (PLRA).  DN 62, p. 4 (citing *Maxton v. United States*, No. 12-CV-00383-WYD-NYW, 2016 WL 8672997, at *4 (D. Colo. Feb. 5, 2016) ("To allow Mr. Maxton to proceed in this action on these new and unrelated claims would permit . . . him to avoid paying the filing fees required for separate actions and to circumvent the three strikes provision under the PLRA."), *report and recommendation adopted*, No. 12-CV-00383-WYD-KMT, 2016 WL 1253614 (D. Colo. Mar. 31, 2016)).

Defendants attach no exhibits, but they do refer to several pages of records Plaintiff attached to his pretrial memorandum (DN 60), which he filed the same day as his motion. Specifically, they argue that "the medical records Plaintiff submitted demonstrate that Plaintiff was provided pain medication," pointing to documents showing 2020 prescriptions for Ibuprofen, Cyclobenzaprine, a muscle relaxer, Indomethacin, another nonsteroidal anti-inflammatory drug typically used for pain, and additional medications for pain.  DN 60-2.

In reply (DN 66), Plaintiff argues, among other things, that it was only after he was taken off of Gabapentin that he realized how much pain he was having and how much the Gabapentin helped with pain relief.   DN 66, p. 2.  He argues that the pain medications he was prescribed were in a family of medicine to which he is allergic, and that being prescribed the muscle relaxer cyclobenzaprine does nothing for his neuropathy pain.  He also argues that because it has been nineteen months since his surgery it is obvious that mitigating the pain is the only option and that "Exhibit E" to his motion "should be sufficient enough to demonstrate gabapentin and/or lyrica (pregabalin) to be the most effective medication."[4] *Id*. at 3-4.  He also states, "Wellpath routinely prescribes gabapentin for neuropathy here and elsewhere.  That fact that they are so unwilling to give Plaintiff Gabapentin demonstrates 'deliberate indifference.'" *Id*. at 4.  He further asserts that his requested relief would not substantially harm others because Wellpath has a poor professional reputation and would serve the public purpose because properly treating the sick is in the public interest.  *Id*.

### Analysis

A party seeking a preliminary injunction "'must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)).  This is so because a court issues a preliminary injunction in a lawsuit to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits.  *See Dataphase Sys., Inc., v. C L Sys., Inc.*, 640 F.2d 109, 113 & n.5 (8th Cir. 1981) (en banc).

---

[4] Exhibit E appears to be a photocopied excerpt from a document, perhaps a text book, titled Sports Medicine & Outpatient Orthopedics.  DN 66-5.

**1. Claims not sufficiently related to the Complaint.**  The Court agrees with Defendants that most of the allegations in his preliminary-injunction motion do not relate to the subject of the Complaint: his care at KSP.  Rather, they relate to his care at LSCC.  The exception is the aspect of the preliminary-injunction that concerns Plaintiff's allegations related to the formulary and need for pain medication.  Other than that, which the Court considers below under the preliminary-injunction standard, the Court denies the requests in Plaintiff's motion because they lie beyond the contours of his Complaint.

Plaintiff states in his declaration that since being housed at LSCC he has been diagnosed with right radiculopathy and right ulnar Manu neuropathy and recommended to an orthopedist for another possible surgery.  This new diagnosis and treatment plan made by a non-Defendant doctor in a different time period and Plaintiff's requests for "aftercare"/PT and transportation to medical appointments for that new diagnosis are not sufficiently related to Plaintiff's allegations in the complaint.  *See e.g.*, *Colvin*, 605 F.3d at 299-300 (finding that the plaintiff could not seek injunctive relief with respect to kosher meals at a facility and during a time period not listed in the complaint, even though the issue of kosher meals at a different facility served the basis of his complaint); *Harris v. Larson*, No. 3:15-CV-252, 2017 WL 710971, at *3 (S.D. Ill. Feb. 22, 2017) ("While this lawsuit was pending, Plaintiff had the surgery and now complains in the motion that post-operative care has been lacking.  While the medical issues that Plaintiff complains about are the same, namely his knee problems, the issues that he raises in this motion for injunctive relief and that which underlies his lawsuit are distinct.") (citing *Colvin*. 605 F.3d at 299-300)), *report and recommendation adopted*, No. 315CV00252, 2017 WL 951396 (S.D. Ill. Mar. 10, 2017).

As this Court stated in its prior Order severing claims for misjoinder that concerned Plaintiff's care at NTC after being transferred from KSP (DN 20), "[a]lthough at both locations

Plaintiff sought treatment for his clavicle injury, his claims arise from the alleged actions or inactions of each individual Defendant at different times, at different locations, and at different stages of treatment."  DN 20, p. 2; *see also Montgomery v. Hall*, No. 3:19-CV-01113, 2022 WL 2931874, at *3 (M.D. Tenn. July 22, 2022) ("While both the remaining claim in the lawsuit and the alleged facts in the Motion to some extent relate to Plaintiff's legal materials, the Complaint and the Motion ultimately concern two distinct sets of events that two different groups of people allegedly committed several years apart.").  Plaintiff's current requests for post-operative care— including pain relief, PT, and medical transportation—do not relate to claims raised in his Complaint.

 **2. Jurisdiction and Remedial Authority.** Nor would this Court even have jurisdiction to grant the requested injunction against officials who are not parties to this action.  "It is elementary that one is not bound by a judgment in *personam* resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969)).  *See also Herrara v. Mich. Dep't of Corr.*, No. 5:10-cv-11215, 2011 WL 3862640, at *3 (E.D. Mich. July 22, 2011)) (holding court lacks jurisdiction to enter an injunction binding prison officials who are not parties to the action) (citing *Zenith Radio*).

 Wellpath is a named Defendant, and, according to Plaintiff, provides medical services at all Kentucky prisons.  But it's at least questionable whether this Court could enjoin Wellpath to dispense medication absent any evidence of a prescription for that drug that Wellpath nevertheless refused to dispense.  And those actors might not be located in this judicial district given Plaintiff's current facility.

**3. Preliminary-Injunction Standard.**  Even assuming Plaintiff could surmount those hurdles, however, the preliminary-injunction motion would fail.

This Court previously allowed to continue past initial review Plaintiff's "Gabapentin-- formulary-discontinuation" claim.  That request seemingly relates to the preliminary-injunctive relief he now seeks regarding renewal of his Gabapentin prescription.  But even if this claim is not moot as a result of the prison transfer, Plaintiff has failed to demonstrate that a preliminary injunction should issue.

A preliminary injunction is an extraordinary remedy that "should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  The district court must consider four factors:  (1) whether the movant is likely to prevail on the merits; (2) whether the movant would suffer an irreparable injury if the court does not grant a preliminary injunction; (3) whether a preliminary injunction would cause substantial harm to others; and (4) whether a preliminary injunction would be in the public interest.  *Abney v. Amgen, Inc.*, 443 F.3d 540, 547 (6th Cir. 2006).  The Court must balance these four criteria, with the degree of proof necessary for each factor depending on the strength of the plaintiff's case on the other factors.  *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 657 (6th Cir. 1996).  The district court is required to make findings concerning all four of these factors unless fewer factors dispose of the issue.  *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir. 1991).

First, the Court holds that Plaintiff is unlikely to prevail on the merits of his claim that Wellpath's change to its formulary and cost-containment efforts violated his constitutional rights. The United States Supreme Court has held that "deliberate indifference to serious medical needs

7

of prisoners" may constitute the "unnecessary and wanton infliction of pain proscribed by the

Eighth Amendment." *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (quotation and citation

omitted); *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). An Eighth Amendment deliberate

indifference claim "includes objective and subjective aspects: (1) a substantial (objective) risk of

serious harm and (2) the official's (subjective) knowledge and disregard of that substantial risk."

*Brown v. Clark*, No. 3:22-cv-21, 2022 WL 3355805, at *2 (W.D. Ky. Aug. 12, 2022) (citing

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Deliberate indifference 'entails something

more than mere negligence' . . . [, *i.e.*, it requires] actual awareness of the substantial risk." *Id.* at

*2 (quoting *Farmer*, 511 U.S. at 835).

Here, Plaintiff's declaration attached to his motion makes clear that he was prescribed

Gabapentin for "psychiatric treatment." DN 58-1, para 22. According to Plaintiff, Gabapentin

"also helps my pain," and "now that I have been taken off of it by psychological services (due to

Wellpath's attempts of saving money) I am now left in torturous pain and this pain is not treated

by Wellpath in any way." *Id*.

This record indicates that Wellpath supplies Gabapentin in at least some circumstances.

In his reply, Plaintiff states, "Wellpath routinely prescribes gabapentin for neuropathy here and

elsewhere." DN 66, p. 4. The record also indicates that Plaintiff has received at least some pain

medications. *See* DN 60-2. Plaintiff does not, however, point to evidence connecting Wellpath's

alleged awareness of Plaintiff's need for pain relief and its alleged decision to change its

formulary for cost-containment reasons. At the preliminary-injunction stage, therefore, the

question is whether Plaintiff is likely to succeed on a claim that Wellpath's alleged formulary

changes (which are not evident in the record) deprive Plaintiff of pain relief and treatment in a

manner that amounts to deliberate indifference. Plaintiff's record and arguments do not suffice

to clear this high bar. "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion[.]" *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

As to the second prong, irreparable injury, Plaintiff concedes that Wellpath continues to allow prescriptions for Gabapentin for pain relief and that other comparable relief (he specifically points to the drug Lyrica) could be provided to him. That indicates that relief related to the Wellpath's formulary is either unnecessary or insufficient to address Plaintiff's pain concerns. This appears to doom his claim with respect to a policy of cost-containment regardless of medical need. As to his concerns with physical therapy and other pain relief, the record lacks support for the notion that this Court's order is essential to avoid an irreparable injury.

The third and fourth factors—substantial harm to others and the public interest—also weigh against preliminary injunctive relief. Preliminary injunctions related to medical care may "have an unduly adverse [e]ffect on the ability of correctional medical personnel to exercise their professional judgment in determining the appropriate course of treatment for inmates." *Garren v. Prisoner Health Servs.*, No. CIV.A. 11-14650, 2012 WL 204481, at *5 (E.D. Mich. Jan. 4, 2012) (footnote omitted), *report and recommendation adopted,,* No. 11-CV-14650-DT, 2012 WL 204468 (E.D. Mich. Jan. 24, 2012). The record and briefing doesn't indicate what broader effects the relief requested might have here. Judicial intervention in internal prison operations without an urgently compelling and extraordinary reason can harm the public interest. *Lang v. Thompson*, No. 5:10-CV-379, 2010 WL 4962933, at *7 (E.D. Ky. Nov. 30, 2010) ("[J]udicial interference is necessarily disruptive, and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context."); *see also Dulak v. Corizon Inc.*, No. 14-10193, 2014 WL 4678085, at *5 (E.D.

Mich. June 9, 2014) (noting that courts are ill-equipped to "micro-manage prison medical treatment" citing *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)), *report and recommendation adopted*, No. 14-10193, 2014 WL 4678086 (E.D. Mich. Sept. 18, 2014).  While the Court is mindful of Plaintiff's particular needs, the limited (at best) showing of compelling legal claim and imminent injury fail to overcome these systematic concerns that courts regularly recognize as counseling against intervention, particularly at the preliminary-injunction stage.

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for preliminary injunction (DN 58).

Date:   January 9, 2023

Benjamin Beaton, District Judge

United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
B213.009

10